1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEAN JOHNSTON,

                              Petitioner,

        v.

ISRAEL JACQUEZ, CHRISTINE
HILLIARD,

                              Respondents.

CASE NO. 2:19-cv-00550-JLR-BAT

**REPORT AND
RECOMMENDATION**

Petitioner Sean Johnston is currently serving the remainder of his sentence in the community at a half-way house, with a projected release dated of July 8, 2019.  Dkt. 1 at 3; Dkt. 42, *United States v. Sean Johnston*, Case No. 11-cr-5486-BHS. Mr. Johnston requests the Court to issue an order: (1) directing the Bureau of Prisons ("BOP") to recalculate his good time credits under the First Step Act of 2018, which amended 18 U.S.C. § 3624(b) and permits federal inmates to earn up to 54 days of good time credit for each year of the sentence imposed, and (2) declaring that this new calculation governs his release date. *See* Dkt. 1 at 6. If the requested relief is granted, Mr. Johnston contends he should be immediately released because with the additional good time credit, his release date would have been April 29, 2019.  *Id.* at 3.

The government contends Mr. Johnston's petition is premature and unripe as the provision of the First Step Act under which Mr. Johnston seeks relief has not yet taken effect and will not take effect until "the date that the Attorney General completes and releases the risk and

REPORT AND RECOMMENDATION - 1

1   needs assessment system." Dkt. 6 at 3. Other district courts that have considered petitions

2   alleging claims similar to Mr. Johnston's, have denied relief because the amendment has not yet

3   taken effect. *See* Dkt. 6, p. 5 (and cases cited therein). The government also contends relief is not

4   appropriate as Mr. Johnston failed to exhaust his administrative remedies. *Id*.

5          Mr. Johnston's contention that the 54 days of good time credit an inmate may earn under

6   the First Step Act is unrelated to the completion of the risk and needs assessment system, has

7   merit.  However, the Court is not in a position to provide the relief Mr. Johnston requests where

8   the language of the First Step Act delays implementation of the 54 days of good time credit, and

9   where there is nothing establishing Congress intended to grant inmates 54 days of good time

10  upon the First Step Act's effective date of December 21, 2018. The undersigned thus

11  recommends dismissal of Mr. Johnston's petition because the provision of the First Step Act

12  under which he seeks relief has not yet taken effect, but does not recommend dismissal on the

13  grounds that his petition was brought prematurely or for failure to exhaust.

14                                      **BACKGROUND**

15  **A.      Mr. Johnston's Term of Imprisonment**

16          Following his indictment in October 2011, Mr. Johnston pleaded guilty to possession of a

17  stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 922(a)(2); and possession of a firearm in

18  furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A). *See United States v.*

19  *Sean Johnston*, 11-cr-5486-BHS, Dkt. 35. The Honorable Benjamin H. Settle sentenced Mr.

20  Johnston to 120 months of imprisonment to be followed by five months of supervised release.

21  Mr. Johnston's current projected release date is July 8, 2019, and he is currently serving the last

22  of his sentence at the Residential Reentry Center in Seattle, Washington, under the custody and

23  control of the BOP. *Id*. at Dkt. 42.

REPORT AND RECOMMENDATION - 2

1    On March 17, 2019, Mr. Johnston filed this habeas petition, alleging that he is being

2    unlawfully deprived of liberty because the BOP has not recalculated his good time credit

3    consistent with the First Step Act. Dkt. 5. Because Mr. Johnston's habeas petition is one of a

4    growing number of § 2241 habeas petitions recently filed by federal prisoners seeking release

5    prior to July 19, 2019,[1] the Court requested submission of written briefing and specifically

6    requested the parties to address: (1) why the Court cannot grant the relief requested when the

7    original congressional intent of 18 U.S.C. § 3624(b) was to grant a prisoner serving a sentence of

8    more than one year, good time credits of 54 days per year; (2) whether petitioner is excused from

9    exhausting his administrative remedies; (3) whether the "risk and needs assessment" of Section

10   101(a) of the First Step Act is relevant to the BOP's calculation of good time credits; and (4)

11   whether the Court may make factual findings to determine if petitioner "has displayed exemplary

12   compliance with institutional disciplinary regulations" under 18 U.S.C. § 3624(b)(1). Dkt. 5 at 2.

13   In addition to considering the parties' briefs (Dkts. 6, 7), the Court heard oral argument on May

14   20, 2019 (Dkt. 9), and considered Mr. Johnston's Statement of Supplemental Authorities (Dkt.

15   11).

16   **B.    History and Enactment of the First Step Act**

17          Under federal statutes, a term of imprisonment is satisfied through actual time in custody

18   plus good time credits. 18 U.S.C. § 3624(a) and (b). The Sentencing Reform Act of 1984

19   eliminated the parole system and sharply cut back on the rate at which federal prisoners could

---

[1] *See e.g.*, *Turner v. Jacquez*, C19-545 JCC-BAT (alleging release date of May 19, 2019); *Corbett v. Jacquez*, C19-531 MJP-BAT (alleging release date of July 7, 2019); *Acedo v. Jacquez*, C19-529 RSM-MLP (alleging release date of July 7, 2019); *Ephrem v. Jacquez*, C19-534 RAJ-BAT (alleging release date of September 30, 2019); *Garcia-Orante v. Jacquez*, C19-536 RAJ-MLP (alleging release date of June 2, 2019); *Rigney v. Jacquez*, C19-548 RSL-MLP (alleging release date of May 30, 2019); and *Soundingsides v. Jacquez*, C19-544 JCC-MLP (alleging release date of June 20, 2019).

REPORT AND RECOMMENDATION - 3

earn good time credit, providing in § 3624(b) that prisoners could receive "credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment." The BOP calculated the good conduct earned based on actual time served in prison, not the length of the imposed prison sentence. *Barber v. Thomas*, 560 U.S. 474, 476-79 (2010). This resulted in prisoners effectively earning 47 days per year of good conduct credit instead of a full 54 days, because a prisoner is unable to earn a full year's worth of good credit in his final year of incarceration assuming it is a partial year of confinement. *Id.* The Ninth Circuit upheld this computation in *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001), and the Supreme Court approved the 47-day formula using time of actual custody. *Barber*, 560 U.S. at 492.

Shortly after *Barber*, the Department of Justice and the BOP supported legislation that would shift the 54-day calculation from actual time served to the sentence imposed, thereby increasing the maximum available good time credits from 47 to 54 days per year. *See* Hearing on the Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime, Terrorism, Homeland Security and Investigations of the H. Comm. on the Judiciary, 113th Cong., at 23-24 (2013) (Statement of Charles E. Samuels, Jr. Director, Federal Bureau of Prisons).[2] The provision was included in the First Step Act, which was signed into law on December 21, 2018.

Title I of the First Step Act, entitled "Recidivism Reduction," consists of seven sections. The bulk of the title is set out in Section 101, which contains two subsections, each amending a separate statute.

---

[2] Available at https://www.govinfo.gov/content/pkg/CHRG-113hhrg82847/pdf/CHRG-113hhrg82847.pdf, at 23-24.

REPORT AND RECOMMENDATION - 4

1    **Subsection 102(a)** amends 18 U.S.C. § 3621 to provide for implementation of a risk and

2    needs assessment system (referred to as the "System" within the statute) to be developed in

3    accordance with Section 101. The risk and needs assessment system shall (1) determine the

4    recidivism risk level (minimum, low, medium, or high) of each prisoner at intake; (2) assess and

5    determine the risk of violent or serious misconduct of each prisoner; (3) determine the type and

6    amount of programming for each prisoner and assign programming accordingly; (4) reassess

7    each prisoner periodically and adjust programming assignments accordingly; (5) reassign

8    prisoners to appropriate programs based on revised determinations; (6) determine when to

9    provide incentives and rewards for successful participation in programming or productive

10   activities; and (7) determine when a prisoner is ready to transfer into prerelease custody or

11   supervised release. Pub. L. 115-391, § 101, 132 Stat. 5194, 5195-5208 (2018) (promulgating 18

12   U.S.C. §§ 3631-3635); Staff of S. Comm. on the Judiciary, 115th Cong., S.3649, The First Step

13   Act Section by-Section Summary, at 3 (Nov. 15, 2018).

14       The Attorney General has 210 days after enactment (December 21, 2018) within which to

15   develop and publicly release the risk and needs assessment system. 132 Stat. at 5196

16   (promulgating 18 U.S.C. § 3632). Within 180 days after that, the Director of the BOP must

17   assess each prisoner and begin to provide appropriate programming. 132 Stat. at 5208

18   (promulgating 18 U.S.C. § 3621(h)). There is a two-year "phase-in" for the BOP to make

19   programming available to all prisoners. 132 Stat. at 5209.

20       **Subsection 102(b)** makes two amendments to 18 U.S.C. § 3624. As relevant to Mr.

21   Johnston's petition, **Subsection 102(b)(1)** amends 18 U.S.C. § 3624(b)(1) to change the method

22   by which the BOP is to calculate good time credits (hereinafter, "the good time fix amendment"):

23

REPORT AND RECOMMENDATION - 5

Section 3624 of title 18, United States Code, is amended—

(A) in subsection (b)(1)—

(i)  by striking '', beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term,'' and inserting ''of up to 54 days for each year of the prisoner's sentence imposed by the court,''; and

(ii)  by striking ''credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited with in the last six weeks of the sentence'' and inserting ''credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment[.]''

§ 102(b)(1)(A), 132 Stat. at 5210. The Senate's Section-by-Section Report describes the intent of these amendments:

Amends Section 3624 of title 18 of the U.S. Code to clarify congressional intent behind good time credit, which is earned for "exemplary compliance with institutional disciplinary regulations," to ensure that a prisoner who is serving a term of imprisonment of more than 1 year may receive good time credit of 54 days per year toward the service of the prisoner's sentence. Also establishes eligibility for prerelease custody or supervised release for risk and needs assessment system participants. Allows such eligible prisoners to be placed in home confinement or residential reentry centers, subject to the conditions required by the Act and the BOP Director, or transferred to begin a term of supervised release; a violation of the conditions of prerelease custody may result in revocation and require the violator to return to prison. Requires the Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, to issue guidelines for BOP to use in determining the appropriate type of prerelease custody or supervised release and level of supervision required, as well as consequences for violations of prerelease custody conditions. Requires the BOP Director to enter into agreements with the United States Probation and Pretrial Services to supervise prisoners placed in home confinement and ensure that there is sufficient prerelease custody capacity to accommodate all eligible prisoners. Additionally, allows prisoners to receive mentoring services from a person that provided those services to the prisoner while incarcerated, absent a significant security risk.

*Clarifies that the amendments in this section related to prerelease custody shall take effect on the date that the Attorney General completes and releases the new risk and needs assessment system,* and apply with respect to offenses committed before, on, or after the date of enactment of the Act, except with respect to offenses committed before November 1, 1987 (which are subject to federal parole).

REPORT AND RECOMMENDATION - 6

The First Step Act Section-by-Section Summary, at 3 (emphasis added).

Mr. Johnston contends the language italicized above, delays implementation of *only* those provisions of Subsection 102 relating to prerelease custody and which are directly dependent on the new risk and needs assessment system (such as new Subsection 102(g)[3]), but *does not* delay implementation of the good time fix amendment contained in Subsection 102(b)(1). The government contends the plain language of the First Step Act establishes that *all amendments made by Subsection 102*, which includes the good time fix amendment, do not take effect until the Attorney General releases the risk and needs assessment system, which has not yet been completed and is not required to be completed until July 19, 2019.

Subsection 102(b)(2) contains the effective date language applicable to Subsection 102:

EFFECTIVE DATE − The *amendments made by this subsection* shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act.

See Pub. L. No. 115-015, 132 Stat. 015 § 102(b)(2) (2018) (emphasis added).

Virtually every district court that has considered habeas petitions similar to the one brought here, has interpreted the "effective date" provision of Subsection 102(b)(2) to preclude relief under the good time fix amendment because that amendment has not yet taken effect. *See* Dkt. 6 at 5 (citing *Jeffrey Crittendon v. Warden White*, 19-cv-669, 2019 WL 1896501 (M.D. Pa. April 29, 2019); *United States v. Marc Yates*, 15-40063-01-DDC, 2019 WL 1779773 (D. Kan. Apr. 23, 2019); *Rufino Munoz v. United States*, 19-cv-324-O, 2019 WL 1778682 (N.D. Tex. Apr.

---

[3] As part of the earned time credit system, Section 102 also adds Subsection (g) to 18 U.S.C. § 3624. § 102(b)(1)(B), 132 Stat. at 5210-13. Under that provision, the BOP can place an "eligible prisoner" who has earned time credits equal to the time remaining on his or her sentence in prerelease custody (home confinement or residential reentry center) or transfer the prisoner to supervised release up to 12 months early.

REPORT AND RECOMMENDATION - 7

23, 2019); *McCullough v. Bureau of Prisons*, 19-cv-639-RMG, 2019 WL 1767393 (S.D. S.C.

Apr. 22, 2019); *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr.

18, 2019) (denial of petition and motion for reconsideration based on the statute's plain language

in delaying the amendment); *Greene v. Underwood*, No. 4:19-cv-160-Y, 2019 WL 1531673

(N.D. Tex. Apr. 9, 2019); *Matthews v. Williams*, No. 4:19-cv-518, 2019 WL 1639776 (N.D.

Ohio Apr. 16, 2019); *United States v. Scouten*, No. 13-cr-20S, 2019 WL 1596881 (W.D.N.Y.

Apr. 15, 2019); *United States v. Parrett*, No. 01-cr-168-JPS, 2019 WL 1574815 (E.D. Wis. Apr.

11, 2019); *Roy v. Bureau of Prisons*, No. 2:19-cv-59-RMP, 2019 WL 1441622 (E.D. Wash. Apr.

1, 2019); *Rizzolo v. Puentes*, 2019 WL 1229772 (E.D. Ca. Mar. 15, 2019); *Darren Bottinelli, et

al. v. Josias Salazar, et al.*, No. 3:19-cv-256-MO, slip op. at *2-3 (D. Oregon Mar. 13, 2019)

(appeal pending, *see Darren Bottinelli, et al. v. Salazar*, C.A. No. 19-35201); *Sheppard v.

Quintana*, No. 5:19-cv-084-DCR, 2019 WL 1103391, at *2 (E.D. Ky. Mar. 8, 2019); *Sennett v.

Quintana*, No. 5:19-cv-085-JMH, 2019 WL 1085173, at *2 (E.D. Ky. Mar. 7, 2019)).

## DISCUSSION

### A.    Constitutional and Prudential Ripeness

The government contends that, "[b]ecause the amendment is not yet effective, any claim

that the Bureau of Prisons has failed to calculate sentence credit according to its terms, is not yet

ripe." Dkt. 6 at 4. Mr. Johnston contends that, because the good time fix amendment should have

taken effect upon the enactment of the First Step Act on December 21, 2018, he would have been

released from custody in April 2019 and therefore, his habeas raises neither a hypothetical nor an

abstract disagreement. Dkt. 7 at 2. Mr. Johnston argues further, "[t]his is not a claim about

whether the BOP has properly counted days. This is a claim about the effective date of the good-

time provision, and whether the BOP should recalculate Mr. Johnston's release date pursuant to

the good-time fix…". Dkt. 7 at 2. Additionally, if Mr. Johnston waited until July 19, 2019, when the government contends the good time fix amendment is effective, his petition would be moot, because his release date (as has already been established by the BOP) is July 8, 2019.

Federal courts are limited to deciding "cases" and "controversies." U.S. Const. art. III, § 2. One component of the "case or controversy" requirement is that a claim must be ripe for review. *Bova v. City of Medford*, 564 F.3d 1093, 1095-96 (9th Cir. 2009). "[R]ipeness addresses when litigation may occur[,]" *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997), and is "designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, (1967)). It has two components, "constitutional ripeness and prudential ripeness." *Id*. To determine constitutional ripeness, a court must examine "whether the issues presented are definite and concrete, not hypothetical or abstract." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (internal citations omitted); *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009). To determine prudential ripeness, the Supreme Court has developed a two-part test: "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id*. at 1006.

As previously mentioned, virtually every district court that has considered petitions alleging the claim as that alleged here by Mr. Johnston have denied the petition as meritless because Subsection 102(b)(1) has not yet taken effect. *See*, Dkt. 6 at 5, *supra*; *see also*, *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *2 (W.D. Wash. Apr. 18, 2019) ([b]ecause the express language of the statute unequivocally delays its effective date, the issue of whether Landry's sentence is correctly calculated pursuant to the First Step Act's amendment is not

REPORT AND RECOMMENDATION - 9

1   "constitutionally ripe or "definite and concrete.")  As discussed in more detail below, the

2   undersigned also agrees that Mr. Johnston's petition should be denied on the merits because

3   Subsection 102(b)(1) has not yet taken effect. However, the heart of Mr. Johnston's habeas

4   petition is that the good time fix amendment should have taken effect immediately and had the

5   Court agreed with his position, he would have been entitled to immediate release because his

6   new release date would have been in April 2019. Thus, the petition is not a "hypothetical or

7   abstract" disagreement for Mr. Johnston. In addition, Mr. Johnston's release date has already

8   been established by the BOP as July 8, 2019. Therefore, forcing him to wait until after July 19,

9   2019, would render his petition moot. For these reasons, the undersigned concludes that his

10  petition is not unripe and does not recommend dismissal on that basis.

11  **B.    Exhaustion**

12       The BOP has an established Administrative Remedy Process for inmates wanting to

13  challenge their sentence calculations before proceeding to court. *See* 28 C.F.R. § 542.10 *et seq.*

14  The inmate must first seek informal resolution of the issue through the institution's staff. 28

15  C.F.R. § 542.13. If dissatisfied with the informal response, the inmate must then formally

16  complain to the institution's warden. *Id.*; 28 C.F.R. § 542.14. If the warden denies the inmate a

17  remedy, the inmate may appeal the denial of relief to the Regional Director of the region in

18  which he is confined. 28 C.F.R. § 542.15(a). Finally, if the Regional Director denies relief, the

19  inmate may appeal to the BOP's General Counsel in Washington, D.C. *Id.* Exhaustion of

20  administrative remedies does not occur until the inmate has requested and been denied relief at

21  all levels of the BOP.

22       At oral argument, the parties confirmed: (1) Mr. Johnston has taken no steps within the

23  BOP's Administrative Remedy Process and (2) the BOP has notified prisoners that the

REPORT AND RECOMMENDATION - 10

1    retroactive amendment to the good time credit statute "is not effective immediately." Dkt. 9, pp.

2    6-7; *see also* Dkt. 11-1 (BOP Notice to Inmate Population). In its Notice, the BOP cites to the

3    "EFFECTIVE DATE" of Section 102(b)(2), and states:

4               We know that inmates and their families are particularly interested in the changes
                regarding good conduct time. The law will allow BOP *in the future* to apply 54

5               days of credit for every year a sentence was imposed, which is a change to the
                prior law.

6

7               While this change may result in additional credit for inmates *in the future*, it is not
                effective immediately not is it applicable to all inmates.

8    *Id.* (emphasis added).

9
            Exhaustion is excused where 1) the prisoner faces irreparable harm from delay incident to

10   pursuing administrative remedies; 2) there is some doubt whether the agency was empowered to

11   render relief; or 3) the agency has indicated predetermination of the issue, rendering exhaustion

12   futile. *Madigan v. McCarthy*, 503 U.S. 140, 146–49 (1992), *superseded on other grounds*, 42

13   U.S.C. § 1997(e).

14
            The Court recognizes that the exhaustion requirement is eminently reasonable where the

15   DOJ and BOP are in the process of implementing a new statute and Congress has given the

16   Executive Branch time for this implementation. Requiring exhaustion after the good time fix

17   amendment has been implemented will allow the BOP to develop a factual record and apply its

18   expertise before subjecting claims to challenges in the federal courts. Under the circumstances of

19   this case however, requiring Mr. Johnston to exhaust is an exercise in futility when the BOP has

20   taken the position, and notified all of its inmate population, that the retroactive amendment to the

21   good time credit statute "is not effective immediately." At oral argument, the government

22   explained that if Subsection 102(b) is effective immediately, Mr. Johnston would be required to

23   exhaust his administrative remedies, but conceded "there may be little purpose in exhausting the

REPORT AND RECOMMENDATION - 11

1  administrative remedies" if the statute is not yet effective. Dkt. 9, p. 19.

2      Because the BOP predetermined the issue and made it clear that any request Mr. Johnston

3  makes to the BOP for calculation of good time credits under the amended statute will be denied,

4  there is no available administrative remedy. Under these circumstances, it would be futile for Mr.

5  Johnston to exhaust his administrative remedies and the undersigned does not recommend

6  dismissal on this basis.

7  **C.    Equal Protection/Due Process**

8      Mr. Johnston contends he is being denied equal protection of the law by the delayed

9  implementation of the good time fix amendment. The First Step Act is clearly retroactive as it

10  states that the good time fix amendment applies equally to all inmates, whether they offended

11  "before, on, or after the date of enactment" of the Act. However, Mr. Johnston points out that the

12  new computation does not apply to all inmates because there are many inmates, like himself,

13  who have release dates between December 21, 2018, and July 19, 2019. Mr. Johnston argues that

14  this "arbitrarily-comprised group" will serve more time than other inmates because the BOP

15  continues to apply the calculation method presently in existence until the good time fix

16  amendment becomes effective on July 19, 2019.

17      "[A] classification neither involving fundamental rights nor proceeding along suspect

18  lines is accorded a strong presumption of validity and must be upheld if there is a rational

19  relationship between the disparity of treatment and some legitimate governmental purpose."

20  *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (citation omitted). The rational basis

21  test sets a low bar. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 903 (9th Cir. 2018). The

22  court "asks whether 'there is any reasonably conceivable state of facts that could provide a

23  rational basis for the classification.'" *Fowler Packing Company, Inc. v. Lanier*, 844 F.3d 809,

1   815 (9th Cir. 2016) (quoting *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)).

2         Here, the delayed application of the good time fix amendment does not target a "suspect

3   class," which is defined by an immutable characteristic such as race, national origin, and gender.

4   *See Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001). Being a "prisoner" or "convicted

5   person" also fails to constitute a suspect class for equal protection purposes. *United States v.*

6   *Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011). Additionally, a prisoner possesses no constitutional

7   right to release before his valid sentence expires. *See Greenholtz v. Inmates of Nebraska Penal*

8   *and Correctional Complex*, 442 U.S. 1, 7 (1979).

9         Contrary to Mr. Johnston's contention,[4] he is also not suffering the wrongful deprivation

10   of good time credits because the "credit toward service for satisfactory behavior" contained in

11   the good time fix amendment merely authorizes the BOP to offer prisoners the benefit of a

12   reduced sentence in exchange for good behavior based on the new 57-day formula. *See*, *e.g.*,

13   *Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005)

14   (BOP's policy of calculating good time credits is subject only to rational basis review); *see*

15   *Molina v. Underwood*, No. 3:19-cv-641-K-BN, 2019 WL 1533444, at *2 (N.D. Tex. Mar. 19,

16   2019) (summarily dismissing § 2241 petition seeking immediate recalculation of good-time

17   credit under the First Step Act and rejecting equal protection and due process claims).

18

19

20   [4] The cases on which Mr. Johnston relies (*see* Dkt. 7 at 10 (citing *Weaver v. Graham*, 450 U.S. 24, 33–34 (1981) (good time credits protected against ex post facto reductions); *Wolff v.*

21   *McDonnell*, 418 U.S. 539, 557 (1974) (compliance with due process required before depriving prisoners of good time credits); *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.

22   1991) (BOP regulations codify constitutionally-required protection against deprivation of good time credits without due process of law) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)),

23   emphasize a prisoner's right to due process before earned statutory good time credits can be taken from him by a retroactive law or regulation, or as the result of a disciplinary punishment – here, the additional good time credits do not exist until the amendment is effective.

REPORT AND RECOMMENDATION - 13

1    The crux of Mr. Johnston's equal protection argument is that if implementation of the

2    good time fix amendment is delayed, he "has to spend an additional 70 days more than

3    others…." Dkt. 9 at 18. The delayed implementation will in fact benefit those prisoners whose

4    47-day release dates fall after July 19, 2019. For example, a prisoner with a release date of July

5    20, 2019 (under the old 47-day calculation) would have his release date accelerated by one day,

6    whereas a prisoner with a release date of 70 days from July 19, 2019, would be released on the

7    same day as the prisoner with the release date of July 20, 2019. However, the fact that the new

8    good time fix will benefit some groups of inmates and not others, is not a basis for invalidation.

9    In fact, the rational basis standard does not require that Congress choose the best means of

10   advancing its goals or that the means chosen is the best fit. *See*, *Vermouth v. Corrothers*, 827

11   F.2d 599, 603 (9th Cir.1987); *Mauro v. Arpaio*, 188 F.3d 1054, 1059–60 (9th Cir.1999). *See*

12   *also*, *United States v. Navarro*, 800 F.3d 1104, 1110-14 (9th Cir. 2015) (rejecting arguments that

13   delayed implementation of Amendments 782 and 788 to the Sentencing Guidelines violated the

14   Due Process and Equal Protection Clauses because delay provided necessary time for court

15   review, accommodated the need to arrange for transition and reentry programs, and allowed

16   affected agencies to prepare for increased workload).

17   The delayed implementation of the good time fix amendment also "bears a rational

18   relation to [the] legitimate end" of allowing "the Executive Branch time for this implementation.

19   It is reasonable to permit that implementation to occur[.]" *See Shah v. Hartman*, No. 1:18-cv-

20   7990, slip op. at *5 (N.D. Ill. Jan. 3, 2019), available at http://www.lisa-legalinfo.com/wp-

21   content/uploads/2019/01/ Order -January-3-2019.pdf. Congress rationally chose to give the BOP

22   a reasonable time to develop and implement through notice-and-comment rulemaking a new

23   approach to awarding credit not only for good conduct, but also for successful completion of

REPORT AND RECOMMENDATION - 14

1    recidivism reduction programming under 18 U.S.C. § 3632(d)(4), and to complete the planning

2    necessary to assist individuals with the reentry process.

3        Accordingly, the Court concludes that Mr. Johnston's claim that the delayed

4    implementation violates his Due Process and Equal Protection rights should be denied.

5    **D.    Statutory Construction of First Step Act**

6        "'In the absence of an express provision in the statute itself, an act takes effect on the date

7    of its enactment.'" *United States v. Shaffer*, 789 F.2d 682, 686 (9th Cir. 1986) (quoting *United*

8    *States v. Clizer*, 464 F.2d 121, 123 n.2 (9th Cir. 1972)). "'The preeminent canon of statutory

9    interpretation requires [the court] to presume that [the] legislature says in a statute what it means

10   and means in a statute what it says there. Thus, [the court's] inquiry begins with the statutory

11   text, and ends there as well if the text is unambiguous.'" *Satterfield v. Simon & Schuster, Inc.*,

12   569 F.3d 946, 951 (9th Cir. 2009) (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th

13   Cir. 2008)).

14       As previously noted, the good time fix amendment is one of three subsections contained

15   in Subsection 102(b). Subsection 102(b)(2), the "Effective Date" subsection, provides that "[t]he

16   amendments made by this subsection shall take effect beginning on the date that the Attorney

17   General completes and releases the risk and needs assessment system under subchapter D of

18   chapter 229 of title 18, United States Code, as added by section 101(a) of this Act." This

19   language is unambiguous. Subsection 102(b)(2) plainly states that the amendments contained in

20   Section 102(b) (which includes the good time fix amendment), do not take effect until the

21   Attorney General releases the risk and needs assessment system, which is due on July 19, 2019.

22   Courts confronted with this same question have concluded that this effective date provision does

23   in fact, apply to the good time fix amendment. *See United States v. Murgia*, No. 3:10-cr-0076-

1    01-HRH, 2019 WL 2236067 (D. Alaska May 22, 2019) (citing *United States v. Richards*, Case

2    No. 3:05-cr-00185, 2019 WL 2008572, at *4 (M.D. Tenn. May 7, 2019) ("[a]lthough Richards

3    argues that the effective-date provision does not apply to the good-time fix, virtually every court

4    in the country confronted with the question has concluded that it does and that, as a result,

5    motions seeking relief under the [First Step Act] now are premature"); *United States v. Sirois*,

6    Case No. 1:11-cr-00206-JAW-2, 2019 WL 1923632, at *2 (D. Me. April 30, 2019) (citation

7    omitted) ("the good time credit provisions of the First Step Act are not yet effective" because

8    "Section 102(b)(2) of the Act specifically provides that the amendments made in subsection

9    102(b) of the Act take effect only when the Attorney General completes the 'risk and needs

10   assessment system' required by Section 101(a) of the Act"); *Crittendon v. White*, Case No. 1:19-

11   cv-669, 2019 WL 1896501, at *1 (M.D. Pa. April 29, 2019) (good time credit amendment does

12   "not take effect until the Attorney General completes the 'risk and needs assessment system'");

13   *United States v. Yates,* Case No. 15-40063-01-DDC, 2019 WL 1779773, at *3 (D. Kan. April 23,

14   2019) ("[c]ourts have concluded that the plain language of § 102 of the First Step Act mandates

15   the change to good-time credit calculations after the Attorney General releases the risk and needs

16   assessment system mandated by the Act"); *Matthews v. Williams*, 4:19CV518, 2019 WL

17   1639776, at *2 (N.D. Ohio, April 16, 2019) (citation omitted) ("[t]he First Step Act is explicit

18   about the effective date of the new good-time provisions[,]" which is on the date that "the

19   Attorney General completes and releases the risk and needs assessment system"); *United States

20   v. Scouten*, Case No. 13-CR-20S, 2019 WL 1596881, at *1 (W.D.N.Y. April 15, 2019) (citation

21   omitted) ("[b]y the plain terms of the Act, the provision is not effective until the Attorney

22   General completes the risk and needs assessment system"); *Johnson v. Bureau of Prisons*, Case

23   No. 4:19-cv-224-O, 2019 WL 1569360, at *1 (N.D. Tex. April 11, 2019) ("the good-time-credit

REPORT AND RECOMMENDATION - 16

1   change will not take effect until the attorney general completes the 'risk and needs assessment

2   system' required to be completed within 210 days after the December 21, 2018 enactment, as

3   provided by §§ 101(a) and 102(b)(2) of the [First Step Act] 2018"); *United States v. Parrett*,

4   Case No. 01-CR-168-JPS, 2019 WL 1574815, at *1 (E.D. Wis. April 11, 2019) ("the Act's good-

5   time provisions have not yet taken effect; before they do, the Attorney General must complete

6   the 'risk and needs assessment system'"); *United States v. Powell*, Case No. 5:11-cr-75-JMH-1,

7   2019 WL 1521972, at *3 (E.D. Ky. April 8, 2019) (provision amending good time credit statute

8   "has not yet taken effect"); *Roy v. United States Bureau of Prisons*, Case No. 2:19-CV-59-RMP,

9   2019 WL 1441622, at *1 (E.D. Wash. April 1, 2019) ("[t]he good-time provisions of the First

10  Step Act ... did not become effective when the Act took effect on December 21, 2018")). *See*

11  *also*, *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr. 18, 2019)

12  (denial of petition and motion for reconsideration based on the statute's plain language in

13  delaying the amendment).

14      As other petitioners before him have argued, Mr. Johnston contends it makes little sense

15  to delay implementation of the good-time fix amendment because the BOP could begin

16  calculating good time credit pursuant to the amendment immediately. While this may be

17  technically correct, the Court must assume that Congress said what it meant and meant what it

18  said. Here, Congress specifically stated that the Section 102(b) amendments would not take

19  effect until the Attorney General completes the risk and needs assessment system, which he has

20  until July 19, 2019 to complete. There is nothing in the statute, in the Constitution, or in the

21  Congressional record to the contrary.

22      Mr. Johnston also urges the Court to consider the totality of the circumstances to construe

23  that the good time fix amendment is immediately effective because Congress clearly intended to

REPORT AND RECOMMENDATION - 17

1    rectify the earlier mistake resulting in the BOP's erroneous good time credit calculation. Mr.

2    Johnston analogizes the circumstances here to those in *Gozlon-Peretz*, where the delayed

3    effective date of the supervised release provisions of the Sentencing Reform Act gave way to the

4    congressional intention to fill a gap in the sentencing scheme. *See Gozlon-Peretz v. United*

5    *States*, 498 U.S. 395, 405 (1991) ("Given the apparent purpose of the legislation to rectify an

6    earlier mistake, it seems unlikely that Congress intended the effective date to be any time other

7    than the date of enactment."). Mr. Johnston urges the Court to correct the "drafting inadvertence"

8    of Congress that deprives well-behaved prisoners of full good time credits under § 3624(b). The

9    Court cannot do so.

10        The plain language of the good time fix amendment makes clear that Congress intended

11    to reject the BOP's prior implementation of good conduct credit based on actual time served and

12    to adopt the contrary position that good time credit is earned based on the imposed sentence

13    length. There is no question that Congress is instructing that federal prisoners are eligible to earn

14    a full 54 days of good conduct credit per year, not the 47 days that resulted under the BOP's

15    policy. However, there is nothing in the record, in the statute itself, or in the Congressional

16    record to indicate that Congress intended the effective date to be other than what is specifically

17    stated in Subsection 102(b)(2). If Congress had wanted Subsection 102(b) to be effective on the

18    date of enactment, it could have made it so by simply not placing the good time fix amendment

19    within Section 102, by specifically stating that it was to be immediately effective, or by not

20    stating any effective date (as it did elsewhere within the Act) so that by default, the subsection

21    would be effective on the date of enactment. *See*, *e.g.*, *Gozlon-Peretz*, 498 U.S. at 404 ("[W]here

22    Congress includes particular language in one section of a statute but omits it in another section of

23    the same Act, it is generally presumed that Congress acts intentionally and purposely in the

REPORT AND RECOMMENDATION - 18

1    disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

2          Congress' intent regarding the effective date of the good time fix amendment is

3    highlighted by the manner in which it treated other provisions of the First Step Act. Congress for

4    instance, implemented a different effective date for Section 603, which amended 18 U.S.C. §

5    3582. The amendment addresses "compassionate" early release, and unlike the new good time

6    fix amendment, the new compassionate early release amendment contained no delay in

7    application language and thus, became effective on December 21, 2018.

8          Mr. Johnston also argues that the delay in implementation does not logically apply to his

9    situation as the BOP already transferred him into prerelease and already calculated his release

10    date, which includes good time credit applied by the BOP under the old policy. Therefore, if the

11    good time fix amendment is not immediately effective, Mr. Johnston could be detained beyond

12    his projected July 8, 2019 release date because the BOP has until July 19, 2019 to develop and

13    release a risk and needs system. The argument raises a theoretical concern that does not appear to

14    track with Mr. Johnston's situation. The government has not argued that under the First Step Act

15    Mr. Johnston can or will be held until July 19, 2019. Additionally, Mr. Johnston has not

16    presented anything showing that the BOP plans on altering his current release date of July 8,

17    2019.

18          The Court is not unsympathetic to Mr. Johnston's argument that he would be entitled to

19    immediate release from his halfway house if the good time fix amendment was immediately

20    implemented, but the Court cannot rewrite the amendment to require immediate implementation

21    when Congress declined to do so. To uphold Mr. Johnston's position, the Court would have to

22    ignore the plain language of Subsection 102(b)(2), which provides that the amendments made in

23    subsection 102(b) of the Act take effect only when the Attorney General completes the "risk and

REPORT AND RECOMMENDATION - 19

1   needs assessment system" required by Section 101(a) of the Act. This Court has no power to

2   rewrite or disregard the statute in order to accommodate Mr. Johnston's situation. There is no

3   doubt that Congress can postpone the date on which a law, or part of a law, is to become

4   effective. *See Gozlon-Peretz*, 498 U.S. at 405-08. And where Congress has provided an express

5   effective date for a statutory provision, that date controls. *Id*. at 403-404.

6         Section 102(b)(2) is clear that it covers implementation of the good time fix amendment

7   because it applies to the implementation of *all* of Section 102(b). In addition, and contrary to Mr.

8   Johnston's position, the risk and needs assessment system does involve sentence calculation to

9   the extent that the system must "determine when a prisoner is ready to transfer into prerelease

10   custody or supervised release in accordance with § 3624." First Step Act of 12018, Pub. L. No.

11   115-015, 132 Stat. 015 § 101(a) (2018).

12         Accordingly, the undersigned recommends that Mr. Johnston's habeas petition seeking

13   recalculation of his good time credits under the First Step Act be **denied**.

14   **OBJECTIONS AND APPEAL**

15         This Report and Recommendation is not an appealable order.  Therefore a notice of

16   appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

17   assigned District Judge enters a judgment in the case.

18         Objections, however, may be filed and served upon all parties no later than **June 25,**

19   **2019.**  The Clerk should note the matter for **June 27, 2019**, as ready for the District Judge's

20   consideration if no objection is filed.  If objections are filed, any response is due within 14 days

21   after being served with the objections.  A party filing an objection must note the matter for the

22   Court's consideration 14 days from the date the objection is filed and served.  The matter will

23   then be ready for the Court's consideration on the date the response is due.  Objections and

REPORT AND RECOMMENDATION - 20

responses shall not exceed seven (7) pages.  The failure to timely object may affect the right to appeal.

DATED this 4th day of June, 2019.

_____

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 21